**GRAHAM v. SQUIER, Warden.**

**No. 365.**

District Court, W. D. Washington, S. D.

April 27, 1942.

Jack H. Jaffe, of Tacoma, Wash., (appointed) for petitioner.

Oliver Malm, Asst. U. S. Atty., of Tacoma, Wash., for respondent.

BLACK, District Judge.

The court has taken under advisement the petition of Jack Graham v. P. J. Squier, Warden of the United States Penitentiary, McNeil Island, Washington, the petitioner having prayed for a writ of habeas corpus upon the ground that his trial and conviction violated the Constitution of the United States, it having been claimed that his questionnaire under the Selective Training and Service Act, 50 U.S.C.A.Appendix § 301 et seq., was introduced in evidence in spite of the fact that portions introduced on the questionnaire were marked "confidential", and in spite of the fact that certain rules and regulations of the Selective Service Administration specified that such matter was to be confidential.

I have had the benefit of argument by counsel appointed for Mr. Graham and by counsel for the government. In addition, I have had the benefit of looking over the regulations, of examining the transcript of that portion of the trial in California which covered the transaction complained of, and also the benefit of written citation of cases.

So far as I know the question is one of first impression—that means that, so far as I know, it is the first time this problem has confronted a court. At least counsel on neither side has indicated to me that the question has ever been argued, much less decided anywhere else.

I do not know whether as a matter of fact Mr. Graham is guilty or innocent of the charge upon which he was convicted. In a habeas corpus proceeding the question is not whether or no the jury decided the issue correctly. The question is whether the jury had a right to consider the question. If the constitutional rights of Mr. Graham were violated to the extent that it can be held he did not have a trial it would be my duty to release him, regardless of how guilty I might think he actually was. On the other hand, if he had a trial without violation of his Constitutional rights then it would be my duty to deny his petition even though personally I might think he was entirely innocent. The question of his guilt or innocence was for the California court. My only problem is—did he have a trial as contemplated by the Constitution?

There can be no question in my mind that if the trial had been before me and if an objection had been made to the introduc-

tion of the portions of the questionnaire now complained of but that I would have rejected it. It is marked "confidential". I cannot say what Judge Roche would have done had objection been made to him. I am assuming though that if the objection had been made to him that is now raised before me that he would have done the same thing I am sure I would do. That is, I am satisfied that if an objection had been timely and clearly made to him, pointing out to him the reasons as clearly as they have been pointed out to me, that he would have told the prosecution that the portions marked "confidential" could not be presented to the jury.

In this court today and in the previous days in connection with this petition Mr. Graham has had to accept the services of the attorney that the court secured for him. He didn't know who that attorney would be. But he has been very fortunate. He has secured the services of an excellent attorney who has very ably and diligently presented the matter. In California, however, he was not required to run the risk of such attorney as the court might select for him. Judge Roche might have named an able and experienced attorney who was not able for some reason to serve and as a result Mr. Graham might have had an attorney whom he did not desire. But that was not the situation in California. Mr. Graham had an attorney that was selected and secured by his wife, paid for by his wife, and accepted by him. In other words, I must conclude that the attorney he had in California was the attorney he wished.

When the question arose in the first instance, his attorney expressed a desire to know more about the matter intended to be offered so that he could make an objection. After he was informed he made no objection. In fact, while he did not specifically ask that the particular matter here objected to be introduced, the inference from his language is that he was soliciting its introduction. He never said anything at all by way of objecting to the court until it was all in and the jury had heard it all. Then he made no actual objection to the court and made no application to the court to strike it. He did not ask the court to instruct the jury to disregard it. I am not finding any fault with that attorney. We do not know what other evidence was in the case. We do not know what Mr. Graham's attorney had in mind. He might have decided his client had no chance of ac-

quittal under the evidence unless the questionnaire was admitted in evidence. The questionnaire indicated that Mr. Graham was ill. His attorney may have thought that Mr. Graham would get more of a benefit from the questionnaire getting in than by being excluded. A man should not, through his attorney, allow certain evidence to be introduced without objection with the hope that it will help him, and then if the result of the jury's verdict is adverse say he did not have a fair trial. If that were true every defendant would just hope that improper evidence would be presented against him and make no objection to it with the idea that he might be acquitted and could walk out the door, and if he were convicted he would not lose anything anyway because in such later event he could have a new trial. I do not know why Mr. Graham's attorney made no objection. But since the petitioner had an attorney who was not forced upon him by anyone other than his own wife and since he ratified that employment it seems to me that he is bound by what his attorney did and by what his attorney failed to do. There is an old adage that one who is silent when he ought to speak will not be allowed to speak when he should keep silence. Mr. Graham's attorney was silent when he should have made an objection and that means that Mr. Graham was silent. I think, therefore, that Mr. Graham should be prohibited from speaking his objection to that evidence now long after he had the opportunity to find out whether the jury would be favorably or unfavorably influenced by the disclosures of the questionnaire.

This is found in the confidential portion of the questionnaire which went to the jury: "Until August 1939 I worked strictly on a commission basis. I haven't worked since then until the present time as I have had two heart attacks in that period." I have known of more than one case in which such a disclosure was all a defendant's attorney needed—just that much evidence in his client's behalf to win an acquittal. Otherwise, his client would have had no chance at all. There is enough in this questionnaire and in the conduct of the attorney that indicates to me that perhaps Mr. Graham's attorney was very shrewdly taking advantage of a situation that might free his client.

I am very regretful that the prosecution did use this entire questionnaire. I have already indicated what my attitude would have been had an objection been made to me at a time when I had a right to pass upon

it. I will close by saying that I have every reason to believe that Judge Roche would have been as anxious to preserve the rights of the defendant had timely objection been made to him. There is nothing in such portion of the record which has been presented to me which would indicate that Judge Roche was ever advised that anyone ever complained of the jury having had this entire questionnaire. It may be that Mr. Graham is extremely unfortunate—it may be that his attorney overlooked entirely an objection that he ought to have made—it may be that if this matter had been kept out Mr. Graham would have been acquitted. I cannot go back and try that California case.

Petitioner's counsel has called my attention to the cases of McKnight v. United States, 6 Cir., 115 F. 972, and State v. Jackson, 83 Wash. 514, 145 P. 470, upon the question of self incrimination, petitioner contending that the infringement of the Constitutional rights of the one accused takes place immediately when the government makes demand for or offers certain evidence.

I may say, however, that those cases were based on different circumstances than is this one. Actually I think it will be found that there were objections by counsel as to each of the demands involved in those cases. Of course, the Constitutional right of a defendant to a fair trial can be infringed by some extreme acts sufficient to entitle the defendant to have the conviction vacated without the necessity of any objection having been taken during the trial. But I do not think this is such a case. As far as the Selective Training and Service Act is concerned there is no word in it that says the questionnaire shall not be presented in court. The most we can say about this questionnaire is that someone who prepared it had printed on it the word "confidential".

█ This is a new question. I think my decision is correct. But some other judges may have a different opinion. Mr. Graham, if he wishes, will have the right to appeal in forma pauperis. I am willing to sign a certificate that there is merit in the appeal and that it is prosecuted in good faith. While, as I have indicated, there are a few cases where the courts have felt that the specific and extreme circumstances involved vitiated the conviction although no objection was interposed at the trial I think the situation involved before me now comes under the general rule, supported by a host of cases, that where the defendant is represented by counsel unless timely objection is made at the trial a verdict of guilty will stand.

If Mr. Graham wishes the Circuit Court of Appeals to pass on the matter he will have that privilege.

The petition is denied.